# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**JAMES DAVID STEWART**                                                                    **PLAINTIFF**

**V.**                       **CIVIL ACTION NO. 3:23-cv-134-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                     **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## FACTS

The plaintiff, James David Stewart, filed for benefits on September 18, 2020, alleging onset of disability commencing on June 21, 2019. The Social Security Administration denied the claim initially and on reconsideration. His insured status expired on September 30, 2020. Following the hearing, the ALJ issued an unfavorable decision on September 28, 2022. (Dkt. 5 p. 22-31).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

The ALJ found Stewart had the following severe impairments: residuals from right below the knee amputation, disorder of the cervical spine, and headaches. The ALJ found he retained the residual functional capacity (RFC) to perform sedentary work except that he can only occasionally lift ten pounds and frequently lift negligible weights. He can stand and walk for two hours and can sit for six hours. He can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. He can never balance above ground level or on slippery or erratically moving surfaces. Stewart can occasionally crouch and stoop, but never kneel or crawl. He can frequently reach, handle and finger with bilateral upper extremities, but can never operate foot controls with the right lower extremity. Stewart should avoid all exposure to workplace hazards.

The ALJ found Stewart cannot perform any of his past relevant work as a metal fabricator, which is heavy, skilled work. The claimant was a younger individual as of his date last insured and has at least a high school education. Based on the testimony of the vocational expert, the ALJ found Stewart could do other jobs that exist in substantial numbers in the national economy, namely order clerk, which is sedentary, unskilled work (21,000 jobs); machine tender which is sedentary, unskilled work (275,000 jobs); and surveillance monitor which is sedentary, unskilled work (41,000 jobs). The ALJ, therefore, determined that Stewart was not disabled through the date of the decision.

## ANALYSIS

The plaintiff argues that the ALJ, though finding Stewart's headaches were a severe impairment, failed to include headache-related limitations, rendering the RFC fatally flawed. He faults the ALJ for failure to cite Social Security Ruling 19-4p, 2019 WL 4169635 (Aug. 16, 2019), which guides the evaluation of headache disorders. He argues the ALJ failed to apply this ruling to his evaluation of Stewart's headaches.

Stewart requested that the ALJ order a second consultative examination to assess his physical limitations. Stewart received multiple serious injuries in a head-on automobile collision in 2008. In addition to the foot injury that ultimately led to the below-the-knee amputation, Stewart suffered a broken neck in the accident and has continued to experience symptoms from these injuries.

## EVALUATION OF HEADACHES

The ALJ found the plaintiff's headaches were a severe impairment, but according to the plaintiff's argument failed to either include limitations based on the headaches or alternatively to explain why no limitations were necessary. In assessing the plaintiff's headaches the ALJ provided the following analysis.

> The medical evidence also establishes that the claimant has headaches; however, the record does not document consistent, ongoing complaints of symptoms related to this allegation. Moreover, the record does not document consistent, ongoing treatment related to this complaint (See generally F Exhibits). In fact, the record does not contain evidence of repeated, acute exacerbations requiring immediate physician intervention (See generally F Exhibits). Treatment notes from February 24, 2020, documented complaints of headaches; however, it was also noted that the claimant was awake and alert; he was in no acute distress; his speech was normal; and his recent and remote memory functioning was not impaired (Exhibit C3F/9-10). At a February 24, 2020, visit, it was noted that the claimant's "neurological examination actually is unremarkable except for his right BKA" (Exhibit C3F/13). Brain magnetic resonance imaging from March 6, 2020, showed "mild paranasal sinus disease" and an "otherwise negative MRI brain without contrast" (Exhibit C3F/20). Thereafter, records from May 13, 2020, showed that the claimant was taking "Nortriptyline and it has helped with the severity and frequency of his headaches" (Exhibit C3F/5). However, the claimant also reported that he is "not taking the Nortriptyline daily as he thought this was an abortive therapy" and he is still getting two three headaches per week (Exhibit C3F/5). It was also noted at that the provider "recommended that he continue the Nortriptyline because he has seen some improvement but [the provider has] emphasized that this is a daily medication and should be used daily to get the maximum benefit" (Exhibit C3F/8). Additionally, records from September 21, 2010, documented that he is doing fine from a neurological standpoint (Exhibit C6F/11). At a consultative examination on May 29, 2021, shortly after the expiration of the date last insured, it was noted that the claimant's neurological review of systems was negative (Exhibit C5F). Moreover, the record does not

>document consistent, ongoing complaints of visual phenomena (e.g. –
>photosensitivity, flashes of light, shapes, or bright spots), vision loss, difficulty
>speaking, hearing noises or music that are not otherwise explained, nausea,
>vomiting, and uncontrollable jerking/other movements (See generally F Exhibits).
>These findings, coupled with the lack of significant ongoing treatment, are
>incompatible with disabling headaches.
>R. 28.

The court first finds the ALJ's failure to cite SSR 19-4 was not prejudicial error, as the above analysis clearly applies the ruling. The ALJ found that headaches were a severe impairment and accurately discusses the treatment history for the headaches. The ALJ noted that the medical records did not document consistent, ongoing treatment to corroborate Stewart's complaints. The ALJ noted the absence of any records of acute exacerbations requiring immediate medical intervention. The ALJ also found that there were not consistent, ongoing reports of complaints of photosensitivity, sensitivity to noise, nausea, or vomiting that would be expected with disabling headaches.

The ALJ also expressly considered the effects of treatment. Stewart told his doctor both the frequency and severity of his headaches improved when the prescribed Nortriptyline was used as an abortive treatment. His physician instructed Stewart that the medication should be taken every day and expected Stewart to see the maximum benefit with daily dosing. The ALJ clearly assessed the "consistency and supportability between the reported symptoms and objective medical evidence" in assessing the impact of Stewart's headaches on his ability to work. SSR 19-4p at *8.

The plaintiff implicitly argues that limitations addressing ability to concentrate, remain on task, and maintain regular attendance, are the only limitations that would address his chronic headaches. But these are not the only types of limitations that may be assessed in an RFC because of chronic headaches. In *Garcia v. Astrue*, 293 Fed. Appx. 243, *2 (5th Cir. 2008), the

4

claimant admitted getting good results with medications reducing the frequency and severity of headache. The Fifth Circuit affirmed the ALJ limiting the claimant from working at heights, around dangerous machinery, or driving for a living. In *McCampbell v. Commissioner of Social Security,* 2017 WL 3881463 (S.D. Miss. 2017) , Report and Recommendation adopted, 2017 WL 388, 1072 (S.D. Miss. Sept. 1, 2017), the ALJ found the plaintiff would need to avoid exposure to bright lights because of migraine headaches. See *Cooper v Kijakazi,* 2023 WL 2467880 (N.D. March 10, 2013 (Objective evidence only supported a restriction on exposure to bright lights); *Edwards v. Commissioner of Social Security*, 2023 WL 5096264, * 2 (N.D. Miss. Aug 9, 2023) (Headaches accounted for by limiting exposure to unprotected heights, hazardous moving machinery, exposure to temperature extremes, humidity, limited driving, limited work around vibration, and no working in direct sunlight).

In Stewart's case, the ALJ assigned limitations consistent with his chronic headaches in limiting him from working around workplace hazards. Additionally limiting an individual with a prior history of skilled work to unskilled work is a restriction that would accommodate some impairment in concentration.

Finally the court notes that while the plaintiff argues that limitations for being off task and for absences should have been assigned in the RFC, none of Stewart's medical providers, examiners, or consulting physicians assigned such limitations. *Cooper,* 2023 WL 2467880 at *2 (No objective medical evidence supported limitations for time off task and absenteeism). The court therefore find no prejudicial error and finds substantial evidence supports the RFC assessment.

## CONSULTATIVE EXAMINATION

The plaintiff also argues the ALJ erred in failing to order a second consultative physical examination. In light of the time passed since the expiration of his insured status, he argues that the corrective measure on appeal would be remand for the appointment of a medical expert. The plaintiff points to the opinion of one of the state agency doctors, Dr. Herbert Blumenfeld. Dr. Blumenfeld found the records he was provided were not adequate for the evaluation of Stewart's physical RFC. He suggested a complete physical examination, with evaluation of Stewart's gait, both with and without his assistive device. Thereafter, Dr. Amanda Cooley did a complete physical examination, though not exactly as suggested by Blumenfeld. The ALJ decline to order a second examination. Given that the decision to order another consultative examination was discretionary, and that a full physical examination and report were available, the court does not find any error or failure to develop the record.

**IT IS ORDERED** that the decision of the Commissioner is affirmed.

**SO ORDERED AND ADJUDGED** this the 23rd day of April, 2024.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**